## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GLENN THORPE and PATRICIA
THORPE,

                  **Plaintiffs,**

    **v.**

BOLLINGER SPORTS, LLC; MODELL'S
SPORTING GOODS, INC.; BRG SPORTS,
INC.; and BELL SPORTS, INC.,

                  **Defendants.**

**CIVIL ACTION
NO. 14-04520**

**PAPPERT, J.**                                                          **SEPTEMBER 9, 2015**

### MEMORANDUM

Defendant Bell Sports, Inc. ("Bell") has filed a motion for judgment on the pleadings

pursuant to Federal Rule of Civil Procedure 12(c).  Plaintiffs commenced this action alleging that

Bell, as the designer of the resistance band that injured Plaintiff Glenn Thorpe ("Thorpe"), was

responsible for the Plaintiffs' injuries.  Bell contends that any liability it may have had for the

design of the resistance band was extinguished when it sold the resistance band product line to

Bollinger Sports, LLC ("Bollinger") nearly two years before Thorpe's injuries.  For the reasons

that follow, Bell's motion for judgment on the pleadings is granted.

### I.  *Factual and Procedural Background*

In September 2011, Bell recalled the Embark resistance bands.  (Second Am.  Compl.

("SAC") ¶ 13, ECF No. 44.)  Bell continued to sell the bands following the recall.  (*Id.*)  In 2012,

Bell sold the Embark resistance band product line to Bollinger.  (*Id.* ¶ 14.)  Bell  allegedly failed

to disclose to Bollinger that the Embark resistance bands had been the subject of  a recall in

2011.  (*Id.* ¶ 15.)

After the sale, Bollinger "continued to sell the Embark resistance bands." (*Id.* ¶ 14.) Thorpe was injured on January 9, 2014 while using an "Embark resistance band, item #5775."[1] (*Id.* ¶¶ 11, 18, 123.)  His injury occurred when "a component part of the product became dislodged and struck [him] in the eye." (*Id.* ¶ 123.)  Plaintiffs admit that Bell neither manufactured nor sold the resistance band that caused Thorpe's injuries.  (Pls.' Opp'n J. Pleadings 8.)

Plaintiffs filed a complaint against Bollinger and Modell's Sporting Goods, Inc. ("Modell's") on July 18, 2014, alleging product liability claims sounding in strict liability and negligence as well as a claim for loss of consortium.  (ECF No. 1.)  Plaintiffs amended their complaint on October 28, 2014, naming Bell and BRG Sports, Inc. as additional defendants.  Both Modell's and Bollinger answered the amended complaint and filed cross-claims against Bell.  (ECF Nos. 13, 14.)  Bell answered Plaintiffs' claims on February 4, 2015, (ECF No. 16), and responded to the cross-claims on March 12, 2015.  (ECF No. 23.)  Bell then moved for judgment on the pleadings as to Plaintiffs' claims, (ECF No. 24), and Plaintiffs replied.  (ECF No. 27.)  Prior to this Court's disposition of Bell's motion, Plaintiffs sought leave to amend their complaint to add claims for punitive damages against Bollinger.  (ECF No. 30.)  The Court granted Plaintiffs' motion, and Plaintiffs filed a Second Amended Complaint ("SAC"), which alleges claims against Bell for defective design sounding in strict liability and negligence, misrepresentation sounding in strict liability, breach of express and implied warranties, and loss of consortium.  (ECF No. 44.)  Bell then answered the SAC (ECF No. 49) and refiled its motion

---

[1]      Bollinger admits that "item #5775 is a number affiliated with one of the products it distributed, marketed, and sold," but it denies selling Embark products.  (Bollinger Answer ¶ 11, ECF No. 48.)  Plaintiffs state that Bell sold the "Embark resistance band product line to Bollinger" who "continued to sell the Embark resistance bands." (SAC ¶ 14.)  Despite Plaintiffs' continued reference to the resistance bands as an "Embark product" it is evident from the facts alleged and Plaintiffs' own reading of their SAC that they refer to a product sold by Bollinger.

for judgment on the pleadings. (ECF No. 51.)  Plaintiffs again responded in opposition.  (ECF No. 54.)

## II.   *Legal standard*

A party may move for judgment "after the pleadings are closed–but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings will be granted "only if, viewing all the facts in the light most favorable to the nonmoving party, no material issue of fact remains and the moving party is entitled to judgment as a matter of law."  *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 257 (3d Cir. 2012) (citing *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)).  The Court may consider only the pleadings and documents attached as exhibits, undisputedly authentic documents attached to the motion for judgment on the pleadings, if the plaintiff's claims are based on the documents, and matters of public record.  *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010) (citations omitted).

## III.   *Discussion*

### a.   *Design Defect Pursuant to Restatement (Second) of Torts § 402A*

Restatement (Second) of Torts § 402A[2], imposes liability on any seller of a defective product which is unreasonably dangerous.  *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 383 (Pa. 2014).  Specifically, § 402A reads:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
>> (a)   the seller is engaged in the business of selling such a product, and

---

[2]      Both parties agree that Pennsylvania law governs their dispute and the Restatement (Second) of Torts remains the law in Pennsylvania.  *See Tincher v. Omega Flex, Inc.*, 104 A.2d 328, 395-99 (Pa. 2014) (declining to "adopt" the Restatement (Third) of Torts).

      (b)  it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

    (2) The rule stated in Subsection (1) applies although

      (a)  the seller has exercised all possible care in the preparation and sale of his product, and

      (b)  the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A.

      The term "seller," however, is not designed to extend strict liability to "any and all kinds of sales transactions." *Gavula v. ARA Servs., Inc.*, 756 A.2d 17, 20 (Pa. Super. Ct. 2000) (internal quotation marks omitted). The Pennsylvania Supreme Court has held "that the term 'seller,' as used in § 402A, is used generically to include all suppliers of products who, *because they are engaged in the business of selling or supplying a product*, may be said to have 'undertaken and assumed a special responsibility' toward the consuming public and who are in a position to spread the risk of defective products.'" *Id.* at 20 (citing *Berkebile v. Brantly Helicopter Corp.*, 337 A.2d 893, 898 (Pa. 1975)). An entity that is not engaged in the distribution or marketing, *i.e.*, the chain of distribution, of a product to the public is not subject to strict liability. *Francioni v. Gibsonia Truck Corp.*, 372 A.2d 736, 738 (Pa. 1977) ("What is crucial to the rule of strict liability is not the means of marketing but rather the fact of marketing, whether by sale, lease or bailment, for use and consumption by the public.").

      According to the Plaintiffs, Thorpe was injured while using the Embark model 5775 resistance band on January 9, 2014. (SAC ¶ 123.) Plaintiffs concede that the SAC "acknowledges that Bell Sports did not sell or distribute the very unit that injured [him]," (Pls.' Opp'n J. Pleadings 8), and the SAC contains no facts from which the Court can infer that Bell retained any control over the sale or distribution of the resistance bands after the sale to

Bollinger.  Plaintiffs nonetheless contend that Bell's role in designing the product prior to the sale to Bollinger renders Bell strictly liable for Plaintiffs' injuries.  Specifically, they assert that "Bell Sports placed into the [s]tream of [c]ommerce the actual device that injured plaintiff because . . . in 2012 Bell Defendants sold the Embark resistance band product line to Bollinger Sports, LLC, which continued to sell the Embark resistance bands. . . .  By withholding [information about the recall] Bell Sports made the continued sale of its defective and previously recalled product inevitable, thus establishing Bell Sports' role in the supply of the defective product to unsuspecting customers."  (Pls.' Opp'n J. Pleadings 8-9; *see also* SAC ¶¶ 14, 15.)

"The imposition of strict products liability under § 402A requires that the defendant be in the chain of distribution of the defective product . . . to place the burden for compensating injuries on those who can control the defect and spread its costs through pricing." *Rotshteyn v. Klos Const. Inc.*, No. 02-cv-6591, 2004 WL 1125939, at *2 (E.D. Pa. May 20, 2004) (quoting *Malloy v. Doty Conveyor*, 820 F. Supp. 217, 220 (E.D. Pa. 1993).  Merely licensing a design to another entity that manufactures, distributes and sells the allegedly defective product does not inject the designer into the chain of distribution. *Macauley v. Harris Corp.*, No. 89-cv-6271, 1991 WL 53655, at *3 (E.D. Pa. Apr. 4, 1991).  Likewise, selling a design to an entity that manufactures, distributes and sells the allegedly defective product does not equate to a role in the chain of distribution. *Macauley*, 1991 WL 53655, at * 3 ("Section 402A applies only to those who through manufacturing and distribution intend that products reach the market.").  Bell relinquished all control over the band's design and, thus, the ability to affect or control the alleged defect nearly two years before Thorpe's injury.[3]  Extending strict liability to Bell does

---

[3]        It is undisputed that Bell sold to Bollinger "the Fitness Business, the operational goodwill of the Fitness Business, and the following assets associated with the Fitness Business (collectively the "Purchased Assets"): (a) Trademarks, trade names, business names, service marks, and all other intellectual property associated with the Fitness Business, with the exception of "bellFit", "BellFit", or any similarity thereto, with such intellectual property

not further the policy behind the imposition of strict liability, which "is to ensure the costs of injuries sustained from purchasing defective products are paid by *the manufacturers who put the products on the market* and not by the injured persons themselves." *Cafazzo v. Cent. Med. Health Servs., Inc.*, 668 A.2d 521, 524 (Pa. 1995) (emphasis added); *cf. Sikkelee v. Precision Airmotive Corp.*, 876 F. Supp. 2d 479, 488-89 (M.D. Pa. 2012) (concluding that because the designer of a defective carburetor exercised control over the manufacturing process—by requiring manufacturer to comply with the design—and control over the distribution process—by mandating that the installation of any carburetor occurred pursuant to its designs and mandatory directives—there remained a genuine dispute of material fact as to whether defendant was a manufacturer of the defective product). To allow strict liability to attach here, where there are no allegations that Bell had any involvement in the sale, manufacture or distribution of the resistance band that injured Thorpe, "would do nothing to further the policy behind strict liability." *See Rotshteyn*, 2004 WL 1125939, at *3 (granting summary judgment for defendant because "[p]laintiffs [had] not produced evidence to show that the particular downstacker that injured decedent was sold, manufactured, or distributed by defendant").

Plaintiffs cite the policy considerations mentioned by the Pennsylvania Supreme Court in *Francioni v. Gibsonia Truck Corp.*, 372 A.2d 736 (Pa. 1977) in support of their contention that § 402A liability should be extended to Bell. (Pls.' Opp'n J. Pleadings 7, 9.) These factors include: (1) whether the defendant is the only member of the marketing chain available to the injured plaintiff for redress; (2) whether the imposition of strict liability will serve as an

---

to include but not limited to that described on <u>Exhibit B</u>; (b) The SavasaFitness.com domain name and any other domain names used in connection with the Fitness Business, other than BellFitness.com." (Bell Answer, Ex. A, Asset Purchase Agreement, Sec. 1.1; *see also* SAC ¶ 14.) Bell Sports retained control over "that portion of Seller's Fitness Business represented by its account with Target for its Embark, C9 and other private label products." (Asset Purchase Agreement, Sec. 2.1.) There are no factual averments in the SAC suggesting that Bell retained any control over the product line after its sale and Plaintiffs do not allege that they purchased the resistance band at Target.

incentive to safety; (3) whether the defendant is in a better position than the consumer to prevent

the circulation of defective products; and (4) whether the defendant can distribute the cost of

compensating for any injuries of the consumer resulting from the defective products by charging

for it in the defendant's business. *See Kalumetals, Inc. v. Hitachi Magnetics Corp*., 21 F. Supp.

2d 510, 516 (W.D. Pa. 1998) (describing and applying the *Francioni* factors); *see also Cafazzo*,

668 A.2d at 525-27 (same).  Plaintiffs disregard the fact that the policy considerations they raise

are applicable only after satisfaction of the "precondition necessary for application of [the

*Francioni* factors], that is, establishment of the [defendant] as [a] seller[]."  *Cafazzo*, 668 A.2d at

525.  The Court nevertheless considers Plaintiffs' assertions and concludes that the policy

reasons supporting the imposition of strict liability are not present.

 Plaintiffs first contend that holding Bell "accountable under strict liability theories will

serve to promote safety by incentivizing companies not to conceal defects when selling a product

line to a successor company."  (Pls.' Opp'n J. Pleading 9.)  However, "[t]he safety of products

depends on the judgment of those connected to the research, development, manufacture,

marketing and sale of the product."  *Cafazzo,* 668 A.2d at 526 (quoting *Cafazzo v. Cent. Med.

Health Servs.*, 635 A.2d 151, 154 (Pa. Super. Ct. 1993)).  Because Bell had no control over the

manufacturing or distribution of the resistance band that injured Thorpe, imposing strict liability

will not serve as an incentive to safety.  *See Malloy*, 820 F. Supp. at 220 ("While [the defendant]

does distribute various [products], it did not distribute this particular [product] or even the brand

of [the product] involved in this incident.  Therefore, the imposition of strict liability will not

serve as an incentive to safety in the present case.").

 Plaintiffs also contend that Bell was better positioned than consumers to remedy the

alleged defect by disclosing the alleged defect and prior recall to Bollinger.  (Pls.' Opp'n J.

Pleadings 9.)  The ability to control distribution of a defective product "implies the existence of some ongoing relationship with the manufacturer from which some financial advantage inures to the benefit of the latter and which confers some degree of influence on the putative seller." *Cafazzo*, 668 A.2d at 526; *cf. Sikkelee*, 876 F. Supp. 2d at 487-89.  The SAC fails to allege facts suggestive of any influence Bell had over the manufacturing process or any financial benefit Bell derived from the sale of the resistance bands to consumers after it sold the product line to Bollinger.  Bell was not in a position to remedy the alleged defect that caused Thorpe's injury.

Finally, Plaintiffs assert that Bell "can compensate for personal injuries of the type suffered by Plaintiff Glenn Thorpe by charging for it in the ordinary course of its business." (Pls.' Opp'n Mot. J. Pleadings 9.)  However, the assignment of "liability for no other reason than the ability to pay damages is inconsistent with [Pennsylvania] jurisprudence." *Cafazzo*, 668 A.2d at 526.  Because Bell is not in the chain of distribution, the imposition of strict liability does not serve the purpose of § 402A.  The mere fact that Bell could pay assigns liability "for no reason at all." *Id.*

Only an entity "engaged in the business of selling a product has a duty to make and/or market the product . . . free from 'a defective condition unreasonably dangerous to a consumer or the consumer's property.'" *Tincher*, 104 A.2d at 383.  Thus if the defendant did not, as "a seller (manufacturer or distributor)[,] place[] on the market a product in a 'defective condition'" then it is not bound by this duty. *Id.* at 384.  Bell is not a seller of the resistance band  that injured Thorpe, and thus is not subject to strict liability pursuant to § 402A.

> b.  *Misrepresentation Pursuant to Restatement (Second) of Torts § 402B*

In Count XI, Plaintiffs assert a claim against Bell for misrepresentation pursuant to § 402B of the Restatement (Second) of Torts.  The section reads:

> One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for the physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though
>
> (a)  it is not made fraudulently or negligently, and
>
> (b)  the consumer has not bought the chattel from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402B.

Pennsylvania has adopted this section of the Restatement. *Klages v. Gen. Ordnance Equip. Corp.*, 367 A.2d 304, 310 (Pa. Super. Ct. 1976). Misrepresentation under § 402B requires a showing that the plaintiff's justifiable reliance on a misrepresentation was the proximate cause of his physical harm. *Wolfe v. McNeil-PPC, Inc.*, 773 F. Supp. 2d 561, 573 (E.D. Pa. 2011) (citing Restatement (Second) of Torts § 402B, cmts. g, j).

Section 402B applies to a seller who "makes to the public a misrepresentation of a material fact concerning the *character or quality of a chattel sold by him.*" Restatement (Second) of Torts § 402B (emphasis added). Plaintiffs' § 402B claim fails because, as discussed above, Bell is not a seller of the resistance band that injured Thorpe. Moreover, the only misrepresentation identified in the SAC is Bell's failure to disclose the 2011 recall to Bollinger. (SAC ¶ 15.) The SAC is devoid of any allegations that this representation was made to the public, and thus Thorpe cannot show that he justifiably relied upon the misrepresentation. Bell is not subject to strict liability under § 402B.

### c.  Breach of Express and Implied Warranty

In Count XII, Plaintiffs allege claims for breach of "express and/or implied warranties" against Bell. However, "[t]he laws of breach of warranty, whether express or implied, apply only to sellers." *Davis v. Lowe's Home Cntrs., Inc.*, No. 09-cv-5367, 2011 WL 3862192, at *2

(E.D. Pa. Sept. 1, 2011) (citing *Rotshteyn*, 2004 WL 1125939, at *3 n.3); *see also Blewitt v. Man Roland, Inc.*, 168 F. Supp. 2d 466, 469 (E.D. Pa. 2001) (dismissing breach of warranty claims when "Plaintiffs concede that defendant DeAngelis is not a seller of the subject press, and as such, liability under Section 402A of the Restatement (Second) of Torts is not applicable to DeAngelis."). As Bell was not a seller of the resistance band that injured Thorpe, it cannot be liable for a breach of an express or implied warranty regarding that resistance band.

### d.  Negligent Design

In Count IX, Plaintiffs assert that Bell had a duty to "manufacture and sell the subject Embark resistance band in a reasonably safe condition for ultimate users of said product such as the Plaintiff, Glenn Thorpe." (SAC ¶ 122.) The factual averments in the SAC contradict the conclusion that Bell had such a duty. The Court nevertheless considers whether Bell, as a prior designer of the product, owed a duty to Thorpe and other consumers.

To maintain a negligence action, the plaintiff must show that (1) the defendant owed a duty of care; (2) the defendant breached that duty; (3) the breach caused the injury in question; and (4) resulting damages. *Berrier v. Simplicity Mfg. Inc.*, 563 F.3d 38, 61 (3d Cir. 2009) (citing *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003)). Whether a defendant owes a duty of care to a plaintiff is a question of law in Pennsylvania. *Id.* (citing *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1366 (3d Cir. 1993)).

Bell contends that, as a prior designer which lacked the ability to control the design and manufacture of the resistance band at the time Thorpe was injured, there is no basis upon which to impose a duty.[4] The Court can find no instances in Pennsylvania of the imposition of a duty

---

[4]   The determination of whether a duty of care exists requires an inquiry into the following factors: "(1) the relationship between the parties; (2) the social utility of the [defendant's] conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the [defendant]; and (5) the overall public interest in the proposed solution." *Phillips*, 841 A.2d at 1008 (quoting *Althaus v. Cohen*, 756 A.2

upon a prior designer that relinquished control over the design prior to a consumer's injury.[5]
This is so because negligence "liability hinges upon whether the accident could have been
avoided by the exercise of reasonable care." *Brandon v. Ryder Truck Rental, Inc.*, 34 A.3d 104,
110 (Pa. Super. Ct. 2011); *see also Dahlstrom v. Shrum*, 84 A.2d 289, 290 (Pa. 1951) ("The test
of negligence is whether the wrongdoer could have anticipated and foreseen the harm to the
injured person resulting from his act.").  An entity without the ability to control or alter the
allegedly defective design cannot be saddled with a duty to exercise reasonable care to avoid an
injury caused by the defective design. *See Mellon v. Barre-Nat'l Drug Co.*, 636 A.2d 187, 191-
92 (Pa. Super. Ct. 1993) ("In general, a defendant must be identified as the manufacturer,
distributor, or seller of the offending product before the injuries suffered by the plaintiff may be
found to be proximately caused by some negligent act or omission of the defendant.  Absent such
identification, there can be no allegations of duty, breach of duty, or legal causation, and hence
there can be no liability.") (citations omitted).

Plaintiffs do not respond to Bell's argument that it did not owe a duty to consumers as a
former designer of the product. They argue only that "the factual allegations in their Amended
Complaint more than adequately present valid products liability claims to survive a motion for

---

1166, 1169 (Pa. 2000)).  None of the five factors listed above is dispositive; rather "a duty will be found to exist
where the balance of these factors weighs in favor of placing such a burden on a defendant." *Id.* at 1008-09.

[5]      Though Plaintiffs cite no case law in support of their theory that Bell owed Thorpe and other consumers a
duty of care, the Court found one case that considered the possibility of extending liability to a prior designer of an
allegedly defective product.  In *Sikkelee v. Precision Airmotive Corp.*, the defendants did not manufacture the
defective carburetor that allegedly caused the airplane, which the decedent was flying, to crash.  876 F. Supp. 2d
479, 485 (M.D. Pa. 2012) (denying defendant's motion for summary judgment).  The carburetor, however, was
manufactured pursuant to the defendant's design, which could not be modified or altered without its approval, and
the defendant instructed the mechanics to use the defective carburetor. *Id.* at 484.  The Middle District of
Pennsylvania concluded that "it would entirely defy concepts of fairness and justice and run counter to the
considered history of products liability policy to hold that a Type Certificate holder who exclusively controls the
design and manufacture of replacement component parts and mandates the installation of said parts during an
overhaul of its engine could escape liability for a defect in a component part simply because it is not physically
involved in the manufacture and installation process." *Id.* at 487.  Unlike the defendant in *Sikkelee*, there are no
allegations in the SAC that Bell retained any control over the design of the resistance bands after the sale to
Bollinger.

judgment on the pleadings." (Pls.' Opp'n J. Pleadings 9-10.) Plaintiffs cite *Foley v. Pittsburgh-Des Moines, Co.*, 363 Pa. 1, 68 A.2d 517 (1949), which they contend recognized a claim for negligent product design. In *Foley,* the Pennsylvania Supreme Court did mention the existence of a negligent design claim under Pennsylvania law, but the Court considered whether plaintiffs stated a negligence claim under *Ohio law. Id.* at 31-32. The Pennsylvania Supreme Court made no mention of whether a previous designer of a product owes a duty of care to consumers. The Court is not bound to accept Plaintiffs' unsupported legal conclusion that Bell owed Thorpe a duty of care. Plaintiffs cannot establish that Bell owed a duty of care to consumers, and, thus, their negligence claim fails. *See Sikkelee*, 876 F. Supp. 2d at 493 ("In the products liability context, the duty of care arises where a reasonable jury might find that the defendant is a manufacturer, seller, or distributor of the allegedly defective product.").

> e. *Loss of Consortium Claim*

"Under Pennsylvania law, loss of consortium derives only from the injured spouse's right to recover in tort." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002) (citing *Little v. Jarvis*, 280 A.2d 617, 620 (Pa. Super. Ct. 1971)). Having found that Thorpe's tort causes of action are barred, his wife's claim for loss of consortium against Bell also fails. *Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 438 (3d Cir. 1986) (no recovery on wife's claim for loss of consortium where husband's tort causes of action were barred).

> f. *Claims for Common Law Negligence, Fraud, Negligent Misrepresentation and Punitive Damages*

In the final section of their opposition brief, Plaintiffs contend that they have alleged "cognizable common law claims for negligence, fraud, negligent misrepresentation and intentional conduct against Bell defendants." (Pls.' Opp'n J. Pleadings 10.) Plaintiffs make two arguments in support of this position, both of which are premised on the transaction between Bell

and Bollinger.  First, they contend that their averments that Bell sold the rights to the defective,

recalled product to Bollinger without disclosing the recall and Bollinger's reliance on this

misrepresentation, and by extension the consumer's reliance, state claims of fraud and negligent

misrepresentation.  (Pls.' Opp'n J. Pleadings 11-12.)  Second, they assert that Bell's failure to

disclose the recall to Bollinger renders it liable under Section 321 of the Restatement (Second) of

Torts, which imposes a duty to take reasonable care to prevent an injury from occurring upon an

entity that realized or should have realized its act created an unreasonable risk of physical injury.

(Pls.' Opp'n J. Pleadings 10-11.)

 Despite vaguely describing Bell's sale of the resistance band product line to Bollinger,

(SAC ¶¶ 15, 16), the SAC does not base any claims against Bell on its transaction with

Bollinger.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (allegations in a complaint

must "give the defendant fair notice of what the . . . claim is and the grounds upon which it

rests.") (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Moreover, Plaintiffs were aware of

the arguments Bell made in its initial motion for judgment on the pleadings, and indeed

responded to  them, before they filed their motion for leave to file the SAC.  They did not

however seek to add  any additional claims against Bell.  They have not since requested leave to

amend the SAC to  allege these claims.  The Court need not, without a motion for leave to

amend, grant Plaintiffs  the opportunity to assert these claims.  *See King ex rel. Cephalon Inc. v.*

*Baldino*, 409 F. App'x  535, 539 (3d Cir. 2010) (no abuse of discretion in denying plaintiff's one

sentence request for  leave to amend at the conclusion of his response to defendant's motion for

judgment on the  pleadings); *see also Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*,

482 F.3d 247,  252-53 (3d Cir. 2007); *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289,

292 (3d Cir.

1988) (concluding that district court did not abuse its discretion by denying plaintiff's motion for leave to amend and entering judgment on the pleadings).

The Court nevertheless assumes Plaintiffs seek leave to amend to allege these claims. "[T]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a).  The decision to grant or deny a request for leave to amend is within the discretion of the Court, so long as grounds for doing so are evidenced.  *Amoroso v. Bucks Cnty. Ct. of Common Pleas*, No. 13-cv-0689, 2014 WL 3767000, *6 (E.D. Pa. July 31, 2014) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).  Futility is among the grounds for denying leave to amend.  *In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  "An amendment is futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  *Smith v. NCAA*, 139 F.3d 180, 190 (3d Cir. 1998), *rev'd on other grounds*, 525 U.S. 459 (1999).  In making this determination, the Court applies the same standard of legal sufficiency as under Federal Rule of Civil Procedure 12(b)(6).  *Id.*

### i.  Misrepresentation Claims

To establish a claim under Pennsylvania law of both fraudulent[6] and negligent misrepresentation, a plaintiff must show justifiable reliance on the misrepresentation.  *See Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 277 (Pa. 2005) (listing the elements of fraudulent and negligent misrepresentation).  Justifiable reliance is analyzed under the same framework for both causes of action.  *See, e.g.*, *Sprinturf, Inc. v. Sw. Recreational Indus., Inc.*, 281 F. Supp. 2d 784, (E.D. Pa. 2003) (considering the "justifiable reliance element of fraud and negligent misrepresentation claims" simultaneously).  The facts alleged in the SAC

---

[6]     Plaintiffs contend the facts support a "fraud" claim.  Based on the facts they describe in support of this argument, however, they appear to seek leave to allege a claim for fraudulent misrepresentation. (Pls.' Opp'n Mot. J. Pleadings 11-12.)

do not support the inference that Thorpe in any way relied upon Bell's failure to disclose the prior recall to Bollinger.  Moreover, Plaintiffs provide no support for their contention that Bollinger's alleged reliance on Bell's omission can be imputed to Thorpe.[7]  Because the SAC does not allege that Bell made any representations upon which Thorpe justifiability relied, amendment to assert misrepresentation claims is futile.  *See, e.g.*, *Schweitzer v. Equifax Info. Solutions, LLC*, 441 F. App'x 896, 905 (3d Cir. 2011) (affirming district court's conclusion that plaintiff "could not maintain a cause of action for negligent representation against [defendant] because he was not the one who acted in justifiable reliance on the alleged misrepresentation.").

### ii.   Restatement (Second) of Torts Section 321

The Pennsylvania Supreme Court has not adopted Section 321 of the Restatement (Second) of Torts.[8]  *See DeJesus v. U.S. Dep't of Veterans Affairs*, 479 F.3d 271, 280 n.5 (3d Cir. 2007).  Similarly, the Pennsylvania Superior Court declined to adopt Section 321 because the section "fails to include any concept of to whom the duty is owed, which is a necessary element of a cause of action sounding in tort in Pennsylvania" and "the description of the

---

[7]      Plaintiffs cite only *Benevento v. Life USA Holdings, Inc.*, 61 F. Supp. 2d 407 (E.D. Pa. 1999) in support of their position that they have stated cognizable misrepresentation claims, but fail to articulate the reason for their reliance on this case.  In *Benevento*, the plaintiffs alleged claims for fraudulent and negligent misrepresentation against an insurance company because the insurance company misled plaintiffs' respective sales agents regarding the functions of the accumulator annuities plaintiffs purchased and the "sales agents had informed the plaintiffs as to the workings of the accumulator annuity in accordance with the information, education or training they received or reviewed with [the plaintiffs] the sales and promotional materials and brochures which the [defendant] had provided." *Id.* at 419.  The court concluded that there was evidence sufficient to permit a jury to find that the plaintiffs were justified in their belief that the sales agents from whom they received the misinformation were representatives and agents of the insurance company.  *Id.* at 415.  Because of the agency-like relationship between the company and the sales representatives, the company could be liable for the misrepresentations made by the sales agents and its summary judgment motion was denied.  *Id.* at 416.  Plaintiffs have not alleged any facts in support of a similar relationship between Bell and Bollinger that permits the imputation of liability to Bell for a misstatement by Bollinger to Thorpe.  Moreover, *Benevento* does not establish the principle that Bollinger's reliance on Bell's misstatement can be imputed to Thorpe.

[8]      This section provides "(1) If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect.  (2) The rule stated in Subsection (1) applies even though at the time of the act the actor has no reason to believe that it will involve such a risk."  Restatement (Second) of Torts § 321.

prohibited conduct (that which poses 'unreasonable risk') is too vague to permit principled application of the section." *Glick v. Martin & Mohler, Inc.*, 535 A.2d 626, 629 (Pa. Super. Ct. 1987).

In support of their position, Plaintiffs cite the only case in which a Pennsylvania court has imposed a duty upon a defendant pursuant to Section 321: *Cipriani v. Sun Pipe Line Co.*, 574 A.2d 706, 716 (Pa. Super. Ct. 1990).  In *Cipriani*, a cable company ruptured a gasoline line owned by Sun Pipe Line Company ("Sun") while excavating to install cable lines.  *Id.* at 709. The residents of a development adjacent to the site of the accident brought suit against Sun, the cable company, and other entities involved in the excavation.  One of the theories of liability submitted to the jury was Sun's failure to join PA One-Call, an organization that maintained a registry of companies with underground cables in an effort to inform all contractors excavating over public roads as to the whereabouts of underground pipelines and cables.  *Id.* at 715.  PA One-Call also informs all members about construction in the vicinity of their buried pipelines and cables.  *Id.*  Evidence was submitted to the jury that PA One-Call recruited Sun to join the registry as well as  evidence that the cable contractors called PA One-Call prior to the excavation work.  *Id.*  The  Pennsylvania Superior Court concluded that "under a traditional duty analysis, Sun should have  taken reasonable precautions to prevent the risk of rupture.  Joining PA One-Call certainly seems  to require de minimus effort and to be significant in preventing risk of rupture.  Furthermore,  since Sun would have been informed of the proposed construction as a member of PA One-Call,  there was evidence that if Sun had joined PA One-Call, the rupture would not have occurred."  *Id.* at 715.

In reaching this conclusion, the court did not overrule *Glick*; rather, it distinguished *Glick* and "chose to apply section 321 of the Restatement of Torts under the facts presented in this case." *Id.*  Unlike Sun, which failed to take the de minimus step of joining PA One-Call to alert  others as

16

to the dangerous condition it created, Plaintiffs put forth evidence that there were public reports of the 2011 recall. (*See* Pls.' Opp'n J. Pleadings, Ex. F.)  *Cipriani* is thus distinguishable,  and Plaintiffs' reliance on it is misplaced.

Plaintiffs cite no other cases in support of their position, and the Court has found no other instances of a Pennsylvania court imposing the duty described in Section 321 upon a defendant. The Court accordingly predicts that the Pennsylvania Supreme Court would not apply Section 321 and declines to apply this section.  *See Klein v. Weidner*, 729 F.3d 280, 283 (3d Cir. 2013) ("In the absence of a Pennsylvania Supreme Court ruling on the precise question of law presented, we must predict how it would resolve the question.").

The facts alleged in the SAC do not support claims of misrepresentation or common law negligence under the theories offered by the Plaintiffs.  The Court will not provide Plaintiffs a fourth opportunity to assert claims against Bell.  *See, e.g.*, *Woodend v. Lenape Reg'l High Sch. Dist.*, 535 F. App'x 164, 168 (3d Cir. 2013) (affirming district court's grant of defendant's motion for judgment on the pleadings and denial of plaintiff's request for leave to amend because his request "provides no evidence that his claims would survive a judgment on the pleadings").  Judgment will be entered in favor of Defendant Bell and against Plaintiffs Glenn and Patricia Thorpe as to Counts IX, X, XI, XII, and XIII.

An appropriate Order follows.

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

17